UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

ZUFFA, LLC d/b/a ULTIMATE FIGHTING
CHAMPIONSHIP,

        Plaintiff,                                15-CV-7624 (KMW)
                                                                   **OPINION AND ORDER**

        v.

ERIC T. SCHNEIDERMAN, et al.,

        Defendants.
---------------------------------------------------------------X

KIMBA M. WOOD, District Judge:

        Plaintiff Zuffa LLC ("Plaintiff" or "Zuffa") has moved pursuant to Rule 65 of the Federal Rules of Civil Procedure for a preliminary injunction against Defendants Eric Schneiderman, in his official capacity as Attorney General of the State of New York; Vincent G. Bradley, in his official capacity as Commissioner and Chairman of the New York State Liquor Authority; and Kevin Kim, in his official capacity as Commissioner of the New York State Liquor Authority (collectively, "Defendants"). Zuffa seeks to prevent Defendants from enforcing New York's Combative Sport Law, N.Y. Unconsol. Law § 8905-a, and a related provision of New York's Liquor Law, N.Y. Alco. Bev. Law § 106(6-c)(a), until a trial on the merits can be held to resolve Plaintiff's constitutional challenge to those laws. For the reasons discussed below, the Court DENIES Plaintiff's motion for a preliminary injunction.

I.     BACKGROUND

        Much of the relevant factual background regarding mixed martial arts (MMA) and New York's Combative Sport Law is discussed at length in this Court's three decisions in the related case, *Jones v. Schneiderman*, 11-CV-8215. *See Jones v. Schneiderman*, 888 F. Supp. 2d 421

1

(S.D.N.Y. 2012) (Wood, J.) ("*Jones I*"); *Jones v. Schneiderman*, 974 F. Supp. 2d 322 (S.D.N.Y. 2013) (Wood, J.) ("*Jones II*"); *Jones v. Schneiderman*, 101 F. Supp. 3d 283 (S.D.N.Y. 2015) (Wood, J.) ("*Jones III*"). What follows is a brief overview.

### A. The Origins and Evolution of MMA

Plaintiff Zuffa, which does business as the Ultimate Fighting Championship, is the leading promoter worldwide of professional MMA contests and exhibitions. (Compl. ¶ 15).[1] MMA is a sport combining the elements of multiple different martial arts disciplines and forms of combat, including karate, jiu-jitsu, boxing, kickboxing, grappling, judo, Muay Thai, and Greco-Roman wrestling. (Compl. ¶ 2, [Doc. No. 1]); (Pl.'s Mem. of Law in Supp. Mot. for Prelim. Inj. ("Mot. for Prelim. Inj."), 1-3 [Doc. No. 17]). MMA first drew widespread attention in the United States in 1993, when promoters organized a televised pay-per-view tournament under the name "Ultimate Fighting Championship" ("UFC"). (Mot. for Prelim. Inj., 3). The tournament pitted competitors from different martial arts disciplines against one another, without weight classes and essentially without rules. *Id.* This event and subsequent UFC tournaments in the 1990s were aggressively marketed to emphasize the violence of the competition and the enormous physical risks to the competitors. *Id.* These competitions were variously advertised as "blood sport," "fights to the death," and "no holds barred." (Compl. ¶ 42).

### B. New York's Combative Sport Law and Liquor Law Combat Prohibition

In response to the perceived dangers of MMA following its emergence in the U.S. in the early 1990s, a number of state legislatures began enacting prohibitions on MMA competitions. *Id.* ¶ 43. In 1997, the New York Legislature enacted the Combative Sport Law ("CSL"), N.Y. Unconsol. Law § 8905-a. *Id.* ¶ 47. The law was directed primarily at the new "ultimate" or

---

[1] Plaintiff acquired the UFC brand in 2001. (Mot. for Prelim. Inj., 6).

"extreme" fighting events that combined skills from multiple different disciplines in a "no holds barred format"; legislators expressed concern that these events posed significant health and safety risks to competitors. (Defs.' Mem. of Law in Opp'n to Pl.'s Mot. for Prelim. Inj. ("Defs.' Opp'n"), 2-3 [Doc. No. 33]); (Mot. for Prelim. Inj., 3).

The CSL states that "[n]o combative sport shall be conducted, held, or given within the state of New York," N.Y. Unconsol. Law § 8905-a(2), and provides civil and criminal penalties for any person "who knowingly advances or profits from a combative sport activity," except by acting as a spectator, *id.* § 8905-a(3)(a)-(b).[2] A "combative sport" is defined as "any professional match or exhibition . . . wherein the contestants deliver, or are not forbidden by the applicable rules . . . from delivering kicks, punches, or blows of any kind to the body of an opponent." *Id.* § 8905-a(1). However, "boxing, sparring, wrestling, [and] martial arts" are explicitly excepted from this definition. *Id.* Martial arts is defined as "includ[ing] any professional match or exhibition sanctioned by" one of twelve exempt organizations enumerated in the statute (the "Exempt Organizations"), including the U.S. Judo Association, the U.S. Tae Kwon Do Union, and the World Karate Association (now renamed the World Kickboxing Association). *Id.*[3]

---

[2] Under the statute a person may advance or profit from a combative sport activity in the following ways:
    (b) A person advances a combative sport activity when, acting other than as a spectator, he or she engages in conduct which materially aids any combative sport. Such conduct includes but is not limited to conduct directed toward the creation, establishment or performance of a combative sport, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to attend or participate therein, toward the actual conduct of the performance thereof, toward the arrangement of any of its financial or promotional phases, or toward any other phase of a combative sport. One advances a combative sport activity when, having substantial proprietary or other authoritative control over premises being used with his or her knowledge for purposes of a combative sport activity, he or she permits such to occur or continue or makes no effort to prevent its occurrence or continuation.
    (c) A person profits from a combative sport activity when he or she accepts or receives money or other property with intent to participate in the proceeds of a combative sport activity, or pursuant to an agreement or understanding with any person whereby he or she participates or is to participate in the proceeds of a combative sport activity.
N.Y. Unconsol. Law § 8905-a(3)(b)-(c)

[3] The New York State Athletic Commission is empowered to "promulgate regulations which would establish a process to allow for the inclusion or removal of martial arts organizations" from the list of Exempt Organizations, based, at least in part, on the consideration of statutory factors, including: (a) whether the

3

Four years after the enactment of the CSL, the New York Legislature passed a companion law regulating combative sport events at venues that hold liquor licenses. N.Y. Alco. Bev. Cont. Law § 106(6-c) (the "Liquor Law"); (Compl. ¶ 166). The Liquor Law prohibits these venues from hosting either professional or amateur events where contestants engage in combative sport as that term is defined in the CSL. Like the CSL, the Liquor Law makes exceptions for "boxing, sparring, wrestling, or martial arts" or anything else "excepted from the definition of . . . combative sport" in the CSL. N.Y. Alco. Bev. Cont. Law § 106(6-c)(a)-(b); (Mot. for Prelim. Inj., 5).

Plaintiff alleges that during the time the CSL has been in force, New York state officials have interpreted and enforced the law inconsistently and erratically. *See* (Mot. for Prelim. Inj., 1-2, 6-11). In particular, the New York State Athletic Commission (NYSAC) has issued numerous cease-and-desist orders taking different positions as to whether certain conduct is prohibited under the CSL. However, no one has ever been prosecuted under the CSL.[4] (Defs.' Opp'n, 5).

### C.  The *Jones v. Schneiderman* Litigation

In 2011, Zuffa, as well as several MMA athletes, trainers, and fans, filed suit to challenge the constitutionality of the CSL and corresponding provisions of the Liquor Law. *See Jones I*, 888 F. Supp. 2d at 422. The plaintiffs in that action asserted a variety of claims including: (1) challenges based on the First Amendment; (2) challenges based on the Equal Protection Clause and the Commerce Clause; (3) challenges asserting that the laws lacked a rational basis in

---

organization's primary purpose is to "provide instruction in self-defense techniques"; (b) whether the organization requires the use of "hand, feet, and groin protection during any competition or bout"; and (c) whether the organization has "an established set of rules" that provide for the "immediate termination" of a bout whenever a participant "is in danger of suffering serious physical injury." N.Y. Unconsol. Law § 8905-a(1).

[4] The New York Attorney General and local District Attorneys have concurrent authority to bring criminal prosecutions for violations of the CSL. *See* (Defs.' Opp'n, 7); N.Y. Unconsol. Law § 8905-a(3)(d); N.Y. County Law § 700; N.Y. Crim. Proc. § 20.40. However the NYSAC lacks the authority to enforce the CSL's criminal provisions. *See Jones III*, 101 F. Supp. 3d at 294.

violation of the Due Process Clause; and (4) challenges asserting that the laws were unconstitutionally vague, both facially and as applied, in violation of the Due Process Clause. *Id.* In *Jones I* and *Jones II*, this Court dismissed the majority of the plaintiffs' claims, holding that the CSL had a rational basis and did not discriminate against interstate commerce, and that neither the CSL nor the Liquor Law prohibited protected speech or expressive conduct. *See Jones I*, 888 F. Supp. 2d at 424-31; *Jones II*, 974 F. Supp. 2d at 332-339, 347-53. This Court also dismissed the plaintiffs' facial vagueness challenge and certain as-applied vagueness challenges, *Jones II*, 974 F. Supp. 2d at 339-47, but declined to dismiss other as-applied vagueness challenges, *id.* at 341. In particular, the Court allowed the plaintiffs to proceed with their challenge based on the application of the CSL to professional MMA events sanctioned by an Exempt Organization, in part because of the "[d]efendants' varying interpretations of the statutory language." *Id.*

Following the *Jones II* decision, the parties conducted discovery and cross-filed motions for summary judgment. *Jones III*, 101 F. Supp. 3d at 288. In 2015 in *Jones III*, this Court resolved these motions in favor of the defendants, on the ground that the plaintiffs lacked standing to pursue their as-applied vagueness claim. *Id.* at 289. *Jones III* held that the plaintiffs had failed to make the necessary showing that they faced an imminent threat of prosecution under the CSL because (1) they had not made concrete plans to organize and promote any MMA events in New York; and (2) at the time the lawsuit was filed, New York officials had not taken a clear stance that the CSL prohibited certain types of MMA events, including a professional MMA event sanctioned by an Exempt Organization. *See id.* at 294-99. The Court also advised the plaintiffs to consider bringing a state declaratory judgment action in order to "decisively settle disputes regarding the [CSL's] scope," given that the statute had never been construed by a

New York state court. *Id.* at 299. The plaintiffs then appealed the Court's decisions in *Jones I*, *Jones II*, and *Jones III*. *See* (Notice of Appeal, *Jones v. Schneiderman*, 101 F. Supp. 3d 283 (S.D.N.Y. 2015) (No. 11-CV-8215) [Doc. No. 148]). That appeal is currently pending before the Second Circuit.

### D. Procedural History

Following the Court's decision in *Jones III*, Zuffa entered into an agreement to host a live professional MMA event sanctioned by the World Kickboxing Association ("WKA") at Madison Square Garden ("MSG") on April 23, 2016. *See* (Mot. for Prelim. Inj., 11); (Crenshaw Decl., Ex. C [Doc. No. 20-3]); (Wanagiel Decl., Ex. 1 [Doc. No. 21-1]). Plaintiff then filed its Complaint in the instant action asserting that the CSL and Liquor Law are unconstitutionally vague as applied to a professional MMA event sanctioned by an Exempt Organization, [Doc. No. 1], and on the following day filed a motion to preliminarily enjoin the State from enforcing the challenged provisions against it during the pendency of this litigation, [Doc. No. 17].

## II.   LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The District Court may grant a preliminary injunction when the moving party shows: (1) irreparable harm; (2) a likelihood of success on the merits;[5] and (3) that a preliminary injunction is in the public interest. *New York ex*

---

[5] In general, a party seeking a preliminary injunction may show *either* (a) likelihood of success on the merits, *or* (b) "sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of hardships tipping decidedly in favor of the moving party." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)). However, "where a moving party challenges government action taken in the public interest pursuant to a statutory or regulatory scheme . . . the moving party cannot resort to the 'fair ground for litigation' standard, but is required to demonstrate . . . a likelihood of success on the merits." *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996) (quoting *Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995) (per curiam)) (internal quotation marks omitted). Because Plaintiff in this case seeks to enjoin enforcement of a state statute enacted to protect the public interest in, *inter alia*, health and safety, it must demonstrate a likelihood of success on the merits. *New York ex*

*rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (quoting *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)) (internal quotation marks omitted).[6]

### III. DISCUSSION

Plaintiff contends that its plan to host a WKA-sanctioned MMA event at Madison Square Garden creates a sufficiently imminent, concrete, and particularized injury to confer standing, and that it will suffer irreparable harm if the State is not enjoined from enforcing the CSL against it, thereby allowing the scheduled event to take place. *See* (Mot. for Prelim. Inj., 2, 11). Although the Court agrees that Plaintiff has standing to bring its claim challenging the CSL, the Court declines to consider the merits of Plaintiff's claim, invoking *Pullman* abstention.

---

[6] In some circumstances, a moving party must make a heightened showing of a *substantial* likelihood of success on the merits. *See John E. Andrus Mem'l Inc. v. Daines*, 600 F. Supp. 2d 563, 573-74 (S.D.N.Y. 2009) (Seibel, J.) (citing *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025-26 (2d Cir. 1985)). This heightened standard applies when a preliminary injunction would grant substantially all the relief sought in the complaint, i.e. "the effect of the order, once complied with, cannot be undone." *Id.* at 574 (quoting *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 35 (2d Cir. 1995)). This heightened standard also applies when the injunction sought is mandatory rather than prohibitory. *Tom Doherty Assocs.*, 60 F.3d at 34. A mandatory injunction is one whose "terms would alter, rather than preserve, the status quo by commanding some positive act." *Phillip v. Fairfield Univ.*, 118 F.3d 131, 133 (2d Cir. 1997).

　　Courts in this Circuit have divided on whether an injunction that prohibits enforcement that had previously taken place should be treated as mandatory or prohibitory. *See New York ex. Rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 472 (S.D.N.Y. 2006) (McMahon, J.) (holding that when an injunction "prevents a defendant from continuing to interfere with a plaintiff's rights" it should be treated as prohibitory, even though it alters the status quo by "commanding a cessation of the interference"); *see also Phillip v. Fairfield Univ.*, 118 F.3d at 133-34 (finding an injunction prohibitory because it restrained a party from "acting affirmatively" to interfere with a private agreement reached between two other parties). *But see Monserrate v. New York State Senate*, 695 F. Supp. 2d 80, 89 (S.D.N.Y. 2010) (Pauley, J.) (quoting *SEC v. Unifund SAL*, 910 F.2d 1028, 1040 (2d Cir. 1990)) (imposing heightened standard to injunction barring enforcement of a N.Y. State Senate resolution because it would "fundamentally change the positions of the parties as they existed prior to the grant" and therefore "accomplishes significantly more than preservation of the status quo" (internal quotation marks and citations omitted)). Perhaps reflecting this divide, the Second Circuit has noted that "'the distinction between mandatory and prohibitory injunctions is not without ambiguities or critics' and often leads to 'distinctions that are more semantic[] than substantive.'" *Mastrovincenzo v. City of New York*, 435 F.3d 78, 90 (2d Cir. 2006) (quoting *Tom Doherty Assocs.*, 60 F.3d at 34 (alternation in original)).

　　As evidenced by the discussion below, the Court's decision does not turn on whether or not the injunction sought by Plaintiff is subject to the heightened standard for likelihood of success on the merits. Therefore the Court does not need to decide whether the injunction sought is properly characterized as mandatory or prohibitory, or whether it would grant substantially all the relief sought in the Complaint.

**A. Standing**

"Whether a claimant has standing is the threshold question in every federal case, determining the power of the court to entertain the suit." *In re Gucci*, 126 F.3d 380, 388-89 (2d Cir. 1997) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)) (internal quotation marks omitted). The "'irreducible constitutional minimum of standing contains three elements'":

> (1) "the plaintiff must have suffered an injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) "there must be a causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). If a plaintiff lacks standing, "there is no case or controversy over which a federal court may exercise jurisdiction." *In re Direxion Shares ETF Trust*, 279 F.R.D. 221, 237 (S.D.N.Y. 2012) (Forrest, J.).

In *Jones III*, this Court concluded that Zuffa and the other plaintiffs lacked standing because they had failed to allege an injury that was sufficiently imminent. *Jones III*, 101 F. Supp. 3d at 293. In particular, the Court determined that Zuffa had failed to show that it faced an imminent threat of prosecution *at the time of filing suit* because: (1) it had failed to make concrete plans to hold a sanctioned professional MMA event, and (2) Zuffa had had no contact with the NY Office of the Attorney General (OAG) that would give it reason to believe that its hypothetical event would give rise to a prosecution.[7] *Id.* at 294-95.

Those failings have been remedied in this case. First, Plaintiff's agreements with WKA and MSG to host a sanctioned professional MMA event in New York City on April 23, 2016

---

[7] The Court noted that Zuffa's communications with the NYSAC prior to filing suit were insufficient to establish standing because, *inter alia*, the NYSAC "had no authority to enforce the [CSL's] criminal provisions." *Jones III*, 101 F. Supp.3d at 294.

constitute the sort of "concrete plans" necessary to show the imminence of an injury in fact. *See id.* at 291 (citing *Lujan*, 504 U.S. at 564) ("[A] prosecution can be imminent only if the plaintiff has 'concrete plans' to perform, in the near future, the conduct that officials would consider illegal."). Second, the statements made by the OAG during the course of the *Jones* litigation to the effect that "all sanctioned professional MMA [was] illegal" under the CSL, *id.* at 294, are sufficiently specific to show that prosecution is imminent against this particular Plaintiff because they were made *before* Zuffa commenced this action. *See id.* at 291-92 (collecting cases).

The OAG's statements regarding the illegality of a sanctioned professional MMA event also suffice to show causation and redressability for the purposes of standing. That local District Attorneys are not parties to the instant action does not defeat Plaintiff's standing, because Plaintiff must show only that it is "*likely*, as opposed to merely speculative" that a favorable decision would redress the injury. *See Nat'l Org. for Marriage, Inc.*, 714 F.3d at 688. The relief requested here would, if granted, prevent enforcement of the CSL against Plaintiff by the OAG, the only state agency with enforcement authority that has made a clear threat of prosecution based on Plaintiff's planned conduct. *See* (Mot. for Prelim. Inj., 20).[8] Accordingly, Plaintiff Zuffa has standing to bring its claim with respect to the CSL.

However, Plaintiff Zuffa lacks standing to challenge the combative sport provision of the New York Liquor Law. Zuffa is not a retail licensee under the Liquor Law, and it never applied

---

[8] Neither party has pointed to any statements or other actions by a District Attorney that demonstrate an intent to enforce the CSL against this particular Plaintiff. Although a local District Attorney could, in theory, choose to bring a prosecution against Zuffa under the CSL even if the OAG is enjoined from doing so, such a course of action is sufficiently unlikely so as not to defeat Plaintiff's standing because the injury is too remote. *See Jones III*, 101 F. Supp. 3d at 292 (citing *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010) (explaining that to evaluate whether a plaintiff has demonstrated a "*genuine* threat of *imminent* prosecution," courts consider "whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings" (internal quotation marks omitted))); *see also Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 163 (S.D.N.Y. 1997) (Preska, J.) (holding that an injunction barring the state Attorney General from enforcing an unconstitutional statute would also bind state District Attorneys).

for a retail liquor license; it therefore is not directly subject to the Liquor Law prohibitions on hosting combative sport events. *See* (Defs.' Opp'n, 6). Because Plaintiff has made no allegation that the Liquor Law has been, or will imminently be, applied to its conduct, it has failed to show that it would suffer any injury in fact relating to the Liquor Law.[9]

### B. *Pullman* Abstention

Because Plaintiff's likelihood of success on the merits depends upon the interpretation of an unclear New York state statute that no New York state court has ever construed, this Court abstains under *Pullman*. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941).

"When anticipatory relief is sought in federal court against a state statute, respect for the place of the states in our federal system calls for close consideration of whether a ruling on the constitutionality of the state law is, in fact, necessary." *Expressions Hair Design v. Schneiderman*, 808 F.3d 118, 137 (2d Cir. 2015) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 75 (1997). *Pullman* abstention is "[i]ntended to further the harmonious relation between state and federal courts" by allowing a federal court to abstain from deciding difficult and "unsettled questions of state law that are antecedent to federal constitutional questions." *Tunick v. Safir*, 209 F.3d 67, 74 (2d. Cir. 2000) (internal citations and quotation marks omitted); *see also Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 384 (2d Cir. 2000). Once the federal court has abstained, "the parties may seek a controlling interpretation of the challenged law from the state courts, whose decision could cause the federal constitutional

---

[9] MSG is a licensee subject to the provisions of the Liquor Law. *See* (Defs.' Opp'n, 6). However, MSG is not a party to this action and Plaintiff lacks third-party standing to assert a challenge to the Liquor Law on behalf of MSG because there is no hindrance to MSG asserting its own rights. *See Powers v. Ohio*, 499 U.S. 400, 411 (1991) (a litigant may assert the rights of a third party when (1) the litigant himself has suffered an injury in fact; (2) the litigant has a "close relation" to the third party; and (3) there exists a hindrance to the third party's ability to protect his or her own interests); *Kowalski v. Tesmer*, 543 U.S. 125, 131-34 (2004) (holding that attorneys lacked third-party standing to assert the rights of their prospective clients because, *inter alia*, there was no hindrance that prevented their prospective clients from asserting their own claims).

question to disappear altogether." *Expressions*, 808 F.3d at 137. *Pullman* abstention thus allows a federal court to avoid both: (1) unnecessary or premature decisions on questions of federal constitutional law, and (2) potentially erroneous rulings with respect to state law. *Id.* (quoting *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir. 2001)); *Tunick*, 209 F.3d at 74 (quoting *Pullman*, 312 U.S. at 498-99).

The Second Circuit has held that abstention under *Pullman* is appropriate when three necessary conditions are met: "(1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible to an interpretation by a state court that would avoid or modify the constitutional issue." *Wang v. Pataki*, 164 F. Supp. 2d 406, 410-11 (S.D.N.Y. 2001) (Sweet, J.) (quoting *Greater N.Y. Metro. Food Council v. McGuire*, 6 F.3d 75, 77 (2d Cir. 1993)) (internal quotation marks omitted); *see also Jacoby & Meyers, LLP v. Presiding Justices of First, Second, Third, and Fourth Departments, Appellative Div. of Supreme Court of New York*, 847 F. Supp. 2d 590, 599 n.56 (S.D.N.Y. 2012) (Kaplan, J.); *Winters v. Meyer*, 442 F. Supp.2d 82, 88 (S.D.N.Y. 2006) (McMahon, J.). "Abstention is not appropriate . . . where the meaning of a state statute is clear on its face." *Tunick*, 209 F.3d at 74 (citing *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236 (1984)). Although a court may invoke *Pullman* abstention when the three conditions listed above are met, it is not required to do so. Abstention is not appropriate where "important federal rights . . . outweigh the interests underlying the *Pullman* doctrine." *Kachalsky v. Cacace*, 817 F. Supp. 2d 235, 253 (S.D.N.Y. 2011) (Seibel, J.) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004)).

The three essential conditions for *Pullman* abstention are met in this case. First, the CSL is an unclear state law, susceptible to multiple, different interpretations. In particular, it is not

clear what falls within the scope of the martial arts exception to the definition of a combative sport. The CSL reads in pertinent part: "'martial arts' shall include any professional match or exhibition sanctioned by" one of twelve listed Exempt Organizations. N.Y. Unconsol. Law § 8905-a(1). Since the CSL has been in force, the NYSAC has assumed primary responsibility for interpreting the statute and has embraced widely varying interpretations, including:

> (1) that the CSL permits any kind of martial arts event except MMA, including those not sanctioned by an Exempt Organization, (Mot. for Prelim. Inj., 15);
>
> (2) that the CSL permits an Exempt Organization to sanction only events featuring the martial art found in its name (i.e. the U.S. Judo Organization could only sponsor judo) (Compl. ¶ 82); and
>
> (3) that the CSL permits Exempt Organizations to sanction only "single-discipline" martial arts, even though in practice the NYSAC allowed events featuring Muay-Thai, jiu-jitsu, and kickboxing, all of which combine elements from different martial arts (Compl. ¶¶ 81, 91-94).

Furthermore, the OAG, the entity charged with enforcing the CSL's criminal provisions, has previously stated that the CSL would permit an MMA event sanctioned by an Exempt Organization, only to reverse course and declare that the CSL prohibited any professional MMA event, even if sanctioned by an Exempt Organization. (Compl. ¶¶ 104-113).

This history of shifting interpretations of the CSL, coupled with erratic enforcement that has often contradicted the official interpretation of the law, amply demonstrates that the CSL is unclear on its face. The CSL has never been interpreted by *any* New York state court, *see* (Defs.' Opp'n, 8), leaving this Court with no guidance as to the proper scope of the statute.

The second and third conditions of *Pullman* are also met. Plaintiff's federal constitutional vagueness challenge depends on the interpretation of this state law, and the CSL is susceptible to interpretations that would resolve the statutory uncertainty and eliminate the federal constitutional issue. "A statute is unconstitutionally vague only if it cannot be construed in a way that eliminates the vagueness." *Expressions*, 808 F.3d at 144 (citing *Skilling v. United States*, 561 U.S. 358, 403-04 (2010)). "[C]larity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute." *United States v. Lanier*, 520 U.S. 259, 266 (1997). "Thus, in considering a vagueness challenge to a state statute, a federal court must consider not only how the law is presently drafted, but also how it has been construed by the state courts." *Expressions*, 808 F.3d at 144 (quoting *Kolender*, 461 U.S. 352, 358 (1983)) (internal quotation marks omitted).

Plaintiff has identified two possible readings of the CSL that could eliminate the alleged statutory vagueness, namely (1) that an Exempt Organization could sanction any kind of event, and (2) that an Exempt Organization could sanction any event of the kind found in that Exempt Organization's name. (Mot. for Prelim. Inj., 17). Either of these constructions would likely provide the judicial gloss necessary to resolve any uncertainty in the text of the statute and provide "ordinary people fair notice of the conduct it punishes." *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015).[10]

Abstention under *Pullman* is particularly appropriate where, as here, the state law being interpreted governs issues that are traditionally a matter of state concern, such as health and

---

[10] Defendants embrace neither of these readings of the statute in their brief to the Court. But the OAG's interpretation does not determine how the New York Court of Appeals would construe the CSL. *See Expressions*, 808 F.3d at 140 ("[O]ne set of threatened prosecutions by the state's executive branch shed[s] little light, if any, on how the New York Court of Appeals would construe [the challenged law]."). "[T]he state prosecutors could easily have been mistaken as to the law's true breadth." *Id.* (citing *Stenberg v. Carhart*, 530 U.S. 914, 941 (2000)); *see Crandon v. United States*, 494 U.S. 152, 177 (Scalia, J., concurring in judgment) ("[W]e have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to deference.").

safety. *See Jancyn Mfg. Corp. v. Suffolk County*, 583 F. Supp. 1364, 1371, 1376 (E.D.N.Y. 1984) (citing *Reetz v. Bozanich*, 397 U.S. 82, 86-87 (1970)) (abstaining under *Pullman* when unclear state law involved matters of particular state concern); *N.Y. State Rest. Ass'n v. New York City Bd. of Health*, 556 F. 3d 114, 123 (2d Cir. 2009) (noting "the traditional primacy of state regulation in matters of health and safety"); *Jones I*, 888 F. Supp. 2d at 428-29 (finding that the CSL regulated the health and safety of combatants).

For these reasons, the Court concludes that it would be inappropriate to reach the merits of Plaintiff's vagueness challenge to the CSL before *any* New York state court has had an opportunity to construe the challenged provision. *See Hickerson v. City of New York*, 932 F. Supp. 550, 556 (S.D.N.Y. 1996) (Cedarbaum, J.) ("A federal court should not be the first to construe these provisions. Abstention is warranted to give the New York courts an opportunity to construe the resolution, for the courts could interpret these phrases in such a way as to change or eliminate the vagueness claims."); *Expressions*, 808 F.3d at 139 ("[W]e cannot hold a duly enacted state law unconstitutional based entirely on speculation that the New York courts might give it a[] . . . problematic reading that its text does not require."); *cf. Kachalsky*, 817 F. Supp. 2d at 253 ("Where, as here, state courts have settled upon an interpretation of the statute at issue, *Pullman* abstention is not warranted.").[11]

The Court further concludes that abstention is warranted because the federal interests at stake do not, in this instance, outweigh those interests that underlie the *Pullman* doctrine. First, there will be no chilling effect on First Amendment rights caused by the decision to abstain, because this Court has previously determined that the CSL does not prevent Plaintiff from

---

[11] This Court is not able to certify the question to the New York Court of Appeals. Under New York's certification statute, only "the Supreme Court of the United States, a United States Court of Appeals, or a court of last resort of any other state" may certify dispositive questions of law to the Court of Appeals when no controlling state law precedent exists. N.Y. Comp. Codes R. & Regs. tit. 22, § 500.27.

engaging in any conduct protected by the First Amendment. *See Jones II*, 974 F. Supp. 2d at 333-39 (holding that the CSL does not prohibit protected speech or expressive conduct); *see also Expressions*, 808 F.3d at 141 (abstaining under *Pullman* where "there is a minimal risk that any First Amendment rights . . . will be compromised by our decision to abstain"). Second, as stated in *Jones III*, Plaintiff may still seek a declaratory judgment in state court to settle decisively the scope of the CSL. *See N. Am. Airlines, Inc. v. Int'l Bhd. of Teamsters, AFL-CIO*, No. 04-CV-9949, 2005 WL 926969, at *4 (S.D.N.Y. Apr. 19, 2005) (Karas, J.) (quoting *Accident Fund v. Baerwaldt*, 579 F. Supp. 724, 728 (W.D. Mich. 1984)) ("An important consideration, apparently overlooked by plaintiffs, is their freedom to seek injunctive relief in the state courts; a course of action clearly contemplated by the *Pullman* . . . doctrine[].").[12]

In sum, because this Court wishes to avoid the "friction-generating error that can result when a federal court endeavors to construe a novel state act not yet reviewed by the state's highest court," *Expressions*, 808 F.3d at 137, and because this Court believes that a state court determination of the meaning of the CSL will resolve or modify the federal constitutional issue, this Court abstains.

**IV. CONCLUSION**

For the foregoing reasons, the Court abstains in this case, but retains jurisdiction pending a determination by a state court as to the meaning of the challenged state laws. *Pullman*, 312 U.S. at 501-02. Plaintiff's request for injunctive relief is DENIED without prejudice to its renewal. This Opinion and Order resolves Docket entries 17 and 37.

---

[12] The New York Court of Appeals may also have an opportunity to review this provision through certification. Plaintiff has an appeal currently pending before the Second Circuit that raises a number of constitutional challenges to the CSL, including on the grounds of vagueness as applied to sanctioned professional MMA, and the defendants in that case have asked that the Second Circuit consider certifying that question to the New York Court of Appeals. (Brief of Respondent-Appellee at 64 n.14, *Jones v. Schneiderman*, No. 15-1280 (2d Cir. Nov. 3, 2015)).

SO ORDERED.

DATED:     New York, New York
           January 26, 2016

/s/
KIMBA M. WOOD
United States District Judge